William S. Wolfson, Esq., L.L.C.
1100 Liberty Court
260 Route 202
Flemington, NJ 08822
908 782-9333
Attorney for Anthony Russo and Diana Butler Russo
Our File No.   428.56539
WW 4019

| IN THE MATTER OF | UNITED STATES BANKRUPTCY COURT |
|---|---|
| Anthony and Diana Russo, Debtor | DISTRICT OF NEW JERSEY<br>JUDGE: Honorable Michael B. Kaplan<br>CASE NO.: 08-20476 MBK<br>CHAPTER 13<br>HEARING DATE: May 26, 2009<br>REPLY BRIEF IN RESPONSE TO MOTION BY STEVEN FREDA TO FILE LATE CLAIM |

## RELIEF SOUGHT BY THE MOVANT AND THE RUSSOS' RESPONSE IN OPPOSITION

The moving party Steven Freda seeks this Court's leave to file a late proof of claim. The basis for the claim is in a release containing a promise for indemnification against a debt due Sovereign bank given him by the Chapter 13 debtors Anthony and Diane Russo. The address used for Mr. Freda in a release his attorney prepared was incorrect. He moved from that address over five months before his attorney sent the release to the Russos attorney. Mr. Freda now asserts a lack of notice after providing the Russos with an address he no longer lived at the time the release was sent.

## STATEMENT OF FACTS

The debt to Sovereign bank arises out of a personal guarantee of a construction mortgage loan made by Sovereign to TDS Ventures, LLC. Mr. Freda and

1

Mr. and Mrs. Russo gave the guarantee in order to cause Sovereign to make the loan. Mr. Freda and the Russos were the principals in TDS Ventures, LLC. TDS Ventures, LLC was to build two town homes on land in Sea Isle City, New Jersey. Mr. Freda was to provide management services to the project. The Russos were to be the passive investors.

After a dispute over the progress of construction, the Russos determined to obtain Mr. Freda's interest in TDS Ventures and to release him and indemnify him from the claims of Sovereign. The Russos, taking control of TDS Ventures, soon learned that the project was deeply troubled. The money borrowed from Sovereign Bank was not going to be enough to build out the work and to obtain certificates of occupancies. They obtained mortgage on their home and farm property in Ringoes, New Jersey for $208,000 from Bank of America. The Ringoes properties were previously free and clear of any mortgage.

Mr. Freda, through his then attorney Donald Wilkinson, Esq. drafted the release. The address provided for Mr. Freda in the release was his home at 141 75th Street Sea Isle City, New Jersey 08243. The debtors used this address in the petition to schedule Mr. Freda as a co-obligor.

The release, sent to the Russos' attorney Robert Kuchinsky in July, 2007, contained an address that Mr. Freda has certified to this Court he moved from in February, 2007 some five months before the release was sent. Mr. Freda has certified he sold the home at a closing on May 4, 2007.

Mr. Freda gave the Russos an out of date address within the body of the release where he no longer lived at the time the release was prepared. He now complains of lack of notice of this Chapter 13 case and seeks leave to file a late proof of claim. The

apparent motivation now is Sovereign Bank's judgment and the levy on Mr. Freda's assets. He now seeks to participate in the Russos' Chapter 13 plan.

The Russos built out both homes, obtained certificates of occupancy and placed each with a real estate broker for sale in the hope of being able to recover enough money to repay Sovereign Bank's loan and their own funds. Faced with a catastrophic real estate sales market in 2007-2008 and being unable to sell the homes for what was due Sovereign , the bank foreclosed and sued on the guarantees.

In September of 2007, Sovereign is said to have served Mr. Freda with the summons and complaint in its action on the note and guarantee. Mr. Freda, in his certification to the Cape May County Superior Court, is uncertain if he received these suit papers.

Sovereign also prosecuted a foreclosure action against both town homes. In November, 2008, the Cape May County Sheriff conducted a foreclosure sale of both homes. Sovereign, the only bidder, obtained sheriffs' deeds shortly afterwards. A pair of appraisals by the debtors showed each parcel to be worth $484,000 a piece. The total value is $968,000. The debtors' credit inures to Mr. Freda's benefit as well. Citibank v. Errico  251 N. J. Super.236 (App.Div.1991), See Resolution Trust Corp. 271 N.J. Super. 56 ( Law Div. 1993).Technically, both the Russos and Mr. Freda are guarantors.

Further, the debtors modified plan proposes to pay Sovereign via the trustee (or directly as the Court may allow) $120,000 as soon as the confirmation order is final and non-appealable. The debtors have also proposed to sell or refinance real property within six months.

POINT ONE

CHAPTER 13 BARS ALLOWANCE OF UNTIMELY CLAIMS

Unsecured claimants can only accomplish allowance by filing a timely proof of claim per Bankruptcy Rule 3002( c ). Under Bankruptcy Rule 3002 (a) unsecured claimants must file a proof of claim if they want to participate in the Chapter 13 debtor estate's distribution. An unsecured creditor or an equity security holder must file a proof of claim or interest for the claim or interest to be allowed, except as provided in Rules 1019(3), 3003, 3004, and 3005.

Only timely claims can be paid in a Chapter 13.The claim held by Mr.Freda can not be allowed since it does not fall into one of the exceptions allowing extensions of time under Bankrutpcy Rule 3002 ( c ) .

 11 USC 502(e) (2) bars late claims from being paid out of a debtor estate. a cosigner or co maker, to be eligible to be paid in a Chapter 13 debtors' plan, must file a proof of claim before the expiration of the bar date. In re Rosenthal 233 B.R. 815,817 (Bankr.C.D.Ill.1999).

Under Bankruptcy rule 9006, the 90 day and 180 day periods to file proofs of claim can not be enlarged except as allowed by Bankruptcy Rule 3002(c ).

Retroactive enlargements of time are prohibited as is 'equitable tolling' as Mr. Freda argues in his brief and supporting papers. See In re Gardenhire 209 F. 3d. 1145 (9th Cir.2000). Bankruptcy Courts lack the equitable discretion to enlarge the time to file

4

proofs of claim. See also In re Osborne 76 F.3d 306 ( 9th.Cir. 1996),   In re Tomlan 907 F.2d 114 (9th Cir. 1990) ( The IRS must file a timely proof of claim to be allowed its priority status. The Ninth Circuit Bankruptcy Appellate Panel's decision declining to enlarge the time to file a proof of claim for a creditor's attorney who could not get to his office before the bar date because of earth quake damage to Los Angeles one day prior to the bar date's running illustrates that Bankruptcy Courts do not have the power to make equitable exceptions. In re Edelman 237 B.R.146, 153 (9th Cir. BAP 1999).Tardily filed claims are not allowed in Chapter 13.

The bar date in Chapter 13 cases can not be extended for excusable neglect or through the bankruptcy Court's general equity powers. See In re Dennis   230 B.R. 244 (Bankr. D.N.J. 1999) In re Zich 291 B.R. 883 (Bk. M. D. Ga. 2003).Unless one of the exceptions of B.R. 3002 ( c ) is shown to exist, the Court has no power to allow a tardy claim to be filed and allowed. In re Jones   154 B.R. 816 (Bankr. M.D. Ga. 19930, 9 Colliers on Bankruptcy Sec. 3002.03 [1], p.3002.11 (15th Ed. Rev.2003). A claim is disallowed unless timely filed. In re Andrews 162 B.R. 46, 49
 ( Bankr. M.D. Ga. 1993).

Even an unsecured, unscheduled creditor without notice of the commencement of the Chapter 13 case was denied allowance of a tardy claim after the expiration of the time limits of B.R. 3002 ( c ). See In re Wright 300 B.R. 453 (Bankr. N.D. Ill. 2003). The "inescapable conclusion, then, is that this Court has no authority under the Bankruptcy Code or the Bankruptcy Rules to grant Members Advantage leave to file a late claim, per its request. " See Wright , supra , at page  459-460, citing  In re Ryan, 78 B.R. 175

5

(Bankr.E.D.Tenn.1987), affirmed, 1990 U.S. Dist. LEXIS 6440 (E.D.Tenn. May 15, 1990); In re Kristiniak, 208 B.R. 132, 133-35 (Bankr.E.D.Pa.1997);

See also In re Nwonmu 362 B.R. 705 ( Bankr.E. D. Va. 2007) and In re Dennis  230 B.R. 244  (Bankr. D.N.J. 1999)

POINT TWO

WHERE A CREDITOR GAVE THE DEBTORS AN ADDRESS THAT THE CREDITOR KNEW OR HAD REASON TO KNOW WAS  NO LONGER GOOD, THE CREDITOR SHOULD NOT BE HEARD TO COMPLAIN OF LACK OF NOTICE OF THIS CHAPTER 13 PROCEEDING.

Mr. Freda's attorney drafted the releases and sent them to the Russos' attorney Robert Kuchinsky, Esq. by letter of July, 2007. By July of 2007, Mr. Freda had long since moved from the address his attorney used. Clearly, even if equitable considerations were to be allowed to extend a bar date, all Mr. Freda needed to do was to be sure his attorney put his new address in the release and indemnity he wanted the Russos to give him. Mr. Freda was the one in the best position to know where he was going to move to and to make sure he told his attorney to put his new address in the release being prepared for his benefit.

For equitable reasons, a creditor who furnishes a debtor with an obsolete address at the time it is provided should not be permitted any relief. This is especially compelling where the Russo has already lost property worth $968,000, are paying in an additional $120,000 and have their home and farm for sale to pay Sovereign up to the amount of its claim.  Sovereign's claim is for $1,249,583.31. Sovereign should be left with a $161,583.33 sum to be paid subject to any trustee commissions.

6

POINT THREE

BANKRUPTCY RULE 3005 PROHIBITS ANY DISTRIBUTION TO A TARDY CLAIMANT ON A DEBT SUCH AS AN INDEMNITEE UNLESS THE MUTUAL DEBT IS REDUCED.

In Mr. Freda's case, Sovereign's interest and other collection costs continue to run. If the debtor is paying Sovereign an amount up to the amount of its claim, it is inequitable for the Russos to pay Sovereign more than it is owed indirectly through Mr. Freda. Bankruptcy Rule 3005(a) prohibits a distribution to Mr. Freda unless it diminishes the amount of Sovereign's proof of claim. Mr. Freda seeks to compel Sovereign to pay any post petition fees. Costs or interest he might have avoided by filing an earlier response to Sovereign's suit and then asserting his claims against he Russos for indemnification. Instead, he apparently ignored Sovereign's suit. Any damage was avoidable by Mr. Freda simply responding to the suit papers Sovereign served in September, 2007.

CONCLUSION

For the reasons set forth above, Mr. Freda's late claim must be denied. The Russos should only have to pay up to the amount of Sovereign's claim.

RESPECTFULLY SUBMITTED,

May 19, 2009                     /s/William S. Wolfson
                                 William S. Wolfson, Esq.